## IN THE UNITED STATES COURT OF APPEALS FOR THE
## THIRD CIRCUIT

| | |
|---|---|
| **AQUIL JOHNSON** | : Appeal Docket Number |
| Appellee | : |
| V. | : **No: 26-2056** |
| | : |
| PA. Dep't of Corrections, et al., | : |
| Appellants | : |
| | : |

RECEIVED
JUN 12 2026
U.S.C.A. 3rd CIRCUIT

## SUPPLEMENTAL MOTION FOR SUMMARY ACTION
### Pursuant to 3rd. Circuit Rule 27.4

AND NOW, comes the Appellee Mr. Aquil Johnson respectfully requesting Relief with this Supplemental Motion in the form of Summary Affirmance of the Jury Verdict and in support thereof state the following:

## INTRODUCTION:

On June 3, 2026, The Appellee, Mr. Johnson just received the appellant's appeal case summary outlining the claims that will be raised on this appeal. After reading the list of claims, Mr. Johnson is firmly convinced that this appeal presents no substantial questions for this Court to review and is therefore, ripe for summar Action as demonstrated by the following.

**Relevant Procedural History:**

This is a Civil Action that was filed on March 1, 2021, and proceeded

to a Jury trial on March 30, 2026. The Jury returned a verdict in favor of Mr. Johnson and against the appellant Richard Ellers on April 2, 2026.

On May 1, 2026, the appellants appealed to this Court and on May 17, 2026, Mr. Johnson filed a motion for summary Action. This Supplemental motion for summar action now follows.

**Relevant Factual History:**

In between July 7, 2019, and January 6, 2020, the defendants jointly and severally refused to provide Mr. Johnson with timely emergency dental care which caused Mr. Johnson severe pain and suffering and could have caused Mr. Johnson his life. See, (N.T.,3/33/2026 to 3/31/2026) (Dr. Tejeda acknowledging that Mr. Johnson could have died if the infection had spread.)

The damages included severe pain, head aches, swollen neck, inability to eat, permanent tissue damage and infection inter alia. (N.T.,3/33/2026 to 3/31/2026).

At trial there were several witnesses and the equivalent of a confession from defendant Ellers which provided a sufficient evidentiary basis to demonstrate his liability. Defendant Ellers was also caught lying on the stand and admitted he violated state law when overseeing Mr. Johnson's health care.

Ultimately, a jury of his peers determined that his conduct warranted punitive damages.

## QUESTION INVOLVLED

Should this Honorable Court Summarily Affirm the Jury's verdict under Rule 27.4 where the Appellants did not present a substantial question for any of their four claims in this appeal?

## ARGUMENT# 1:

**THE APPELLANT'S CLAIM THAT THE DISTRICT COURT ERRED BY DENYING THEIR LAST MINUTE MOTION FOR AN EXHAUSTION HEARING IS ENTIRELY MERITLESS AND FORCLOSED AS A MATTER OF LAW PURSUANT TO THIS COURT'S PRECEDENTIAL DECISION IN RINALDI V. UNITED STATES, 904 F.3d 257 (3rd.Cir.2018)**

The Appellants take issue with the fact that the District Court denied their last minute motion for an exhaustion hearing. However, the District Court was entirely Correct in denying the defedants motion. The Question is not even close.

For one, as a matter of law, the Appellants were precluded from obtaining relief for lack of exhaustion pursuant to Rinaldi V. United States because the PA. DOC administrative grievance proceedings were decided on its mertis. There is no question about that.

In Rinaldi, this Court specifically held, "where the prison has chosen to

3

forgo a rejection on procedural grounds and has elected to research, analyze and deny a claim on the merits, both the purposes of exhaustion and exhaustion itself are satisfied." Rinaldi, at 272.

In the case sub judice, Mr. Johnson the Appellee properly and fully exhausted his administrative remedies pursuant to prison regulations. Under this Court's precedent in Rinaldi, since Mr. Johnson followed every prison rule and the prison chose to research, analyzed, investigate and decided the grievance on its merits all the way up to final review, the appellants had absolutely no chance of prevailing on an exhaustion argument.

Lastly, the District Court obviously understood that the appellants last minute motion for an exhaustion hearing was a delay tactic that was prejudicial to Mr. Johnson and refused to allow the appellant the ability to delay a trial for a case that was pending for five years.

As this Court's Precedential decision in Rinaldi foreclosed any possibility of the appellants obtaining relief on an exhaustion argument, the District Court appropriately and lawfully denied their last minute motion for an exhaustion hearing and this Court should affirm as a matter of law.

## ARGUMENT # 2

## THE APPELLANT'S CLAIM THAT THE VERDICT WAS INCONSISTENT IS ENTIRELY WITHOUT MERIT AND ABSURD WHERE THERE WERE TWO COMPLETELY DIFFERENT CATEGORIES OF EVIDENCE AGAINST EACH DEFENDANT AND THE LIABILITY OF DEFENDANT ELLERS DID NOT DEPEND ON THE LIABILITY OF DEFENDANT TEJEDA.

The appellants claim of inconsistent verdicts is not even remotely cognizable in the evidentiary context of this case. See, United States Football League v. National Football League, 644 F. Supp. 1040, 1045 (S.D.N.Y. 1986) (stating that "inconsistent verdicts on separate claims in a civil action are fully permissible."), aff'd, 842 F.2d 1335 (2d Cir. 1988); see also Globus v. Law Research Service, Inc., 418 F.2d 1276, 1290 n.17 (2d Cir. 1969) (stating that "consistent jury verdicts are not, in themselves, necessary attributes of a valid judgment."), cert. denied, 397 U.S. 913, 25 L. Ed. 2d 93, 90 S. Ct. 913 (1970).

For one, by the very nature of a prisoner's §1983 deliberate indifference claim, the liability of one defendant cannot depend on the liability of another defendant where, the prisoner-plaintiff have to establish "personal involvement" of each individual defendant. See, Oke V. Garman, 2020 U.S. Dist. LEXIS 119484 No.18-cv-310 (U.S.Dist.M.D.PA. July 8, 2020) citing, Thomas V. Dragovich, 142

F.App'x 33, 39 (3rd. Cir.2005); Spruill V. Gillis, 372 F.3d 218, 236 (3rd. Cir.2004) and a collection of cases.

As a matter of law, the evidence against defendant Ellers had to be different then the evidence against defendant Tejeda because of the personal involvement requirement, and it was.

At trial, the liability of both defendants depended upon two different categories of evidence. Defendant Tejeda's liability depended upon DC-138A sick call slip forms and Defendant Ellers liability depended upon DC-135A request slip forms and testimony from Health Service Administrator Michelle Fisher (former defendant-settled before trial), Deputy Secretary of Corrections Morris Houser and Richard Ellers himself.

If defendant Tejeda was never charged in this case, the jury still could have found defendant Ellers liable based upon the evidence against him because it stood independently of the evidence against defendant Tejeda.

Second, although the jury did not find defendant Tejeda liable, this was due to the fact that the evidence was direct and overwhelming against defendant Ellers and Circumstantial against Defendant Tejeda.

For example, it was firmly established on the record through the testimony of HSA Michelle Fisher, Deputy Sec'y Morris Houser and Defendant Richard Ellers himself that he was (1) the person responsible for ensuring that Mr. Johnson received the emergency treatment that he needed; (2) he was made aware of the need for Mr. Johnson's treatment and (3) he deliberately disregarded the substantial risk to Mr. Johnson's health, safety and life by ignoring the numerous written and verbal notices made to him regarding Mr. Johnson's need for treatment. See, (N.T. 3/31/2026)

However, unlike Defendant Ellers, there were no witnesses who testified that they personally informed Dr. Tejeda of Mr. Johnson's need for emergency treatment and when Dr. Tejeda testified, he denied having any knowledge of Mr. Johnson's need for treatment.

Dr. Tejeda testified that although his name was listed as the Doctor who scheduled Mr. Johnson's first appointment, he was not the actual person who did it and testified that it could have been the other dentist who put his (Dr. Tejeda's) name on it or, his assistant who received and responded to Mr. Johnson's DC-138A sick call slips without his knowledge or permission. See, (N.T. 3/31/2026).

The jury must have credited this testimony which can be inferred from their questions during deliberations which requested the DOC policy on the chain of

custody regarding the DC-138A sick call slips which would have been the only circumstantial evidentiary basis to form the liability of defendant Tejeda. Where they had no memory or access to said policy during deliberations, they were unable to find Dr. Tejeda liable. See, (N.T. 4/2/2026).

Based upon all the above, in no Universe could the verdict in this case could ever be considered inconsistent. Therefore, the appellant's claim of inconsistent verdicts is meritless and not cognizable in the evidentiary context of this particular case and must be summarily denied.

## ARGUMENT # 3

**THE APPELLANT'S CLAIM THAT THE EVIDENCE DID NOT SUPPORT PUNITIVE DAMAGES OR THAT PUNITIVE DAMAGES WERE EXCESSIVE IS COMPLETELY WITHOUT MERIT WHERE THERE WAS OVERWHELMING EVIDENCE TO ESTABLISH THAT DEFENDANT ELLERS ACTED WANTONLY, RECKLESSLY AND CALLOUSLY WHEN HE REPEATEDLY DISREGARDED MR. JOHNSON'S RIGHTS, HEALTH AND SAFETY**

Under this Court's Precedent in Willow Inn, Inc., V. Public Serv. Mut. Ins, Co., 339 F.3d 224 (3rd.Cir.2005) and Washington v. Gilmore, 124 F.4th 178 (3rd. Cir.2024), the Punitive Damages Award against defendant Ellers was entirely appropriate. In fact, it is beyond dispute.

First, it should be noted that the Appellants do not dispute that the evidence was sufficient to establish liability. However, they fail to acknowledge that the evidence was overwhelming in regards to damages.

As stated above, there was a sufficient evidentiary basis for the Jury to find that Defendant Ellers acted wantonly, recklessly and callously when violating Mr. Johnson's Rights.

Defendant Ellers own testimony established this fact. At trial, defendant Ellers testified that he would become aware of Mr. Johnson's need for emergency treatment through the Dental Backlog Reports that he had to prepare before the 10th of each month and submit to the PA. DOC, Bureau of Health Care Service.

He further testified that Mr. Johnson's identification number and the type of treatment he was waiting for would appear on the Dental Backlog Report each month until Mr. Johnson was actually treated. See, (N.T. 3/31/2026).

Mr. Johnson initially requested treatment in July 2019 and that request was processed and treatment was scheduled for August 5, 2019. However, that treatment never occurred. Thus, pursuant to defendant Ellers own testimony, he was aware of and ignored Mr. Johnson's need for treatment in August, September, October, November and December of 2019.

Additionally, Health Service Administrator Michelle Fisher testified that in November 2019, she forwarded a written notice to defendant Ellers stating that

Mr. Johnson was in need of emergency treatment. Deputy Secretary of Corrections Mr. Morris Houser testified that prior to December 2019, he personally spoke to defendant Ellers about Mr. Johnson's need for treatment and that in December 2019, he personally gave defendant Ellers written notice that Mr. Johnson was in need of treatment. See, (N.T. 3/31/2026).

In spite of written notice from the Dental Backlog Reports, written notice from HSA Michelle Fisher and verbal and written notice from Deputy Sec'y Morris Houser, Defendant Ellers ignored the fact that Mr. Johnson needed treatment, that Mr. Johnson could have died from the infection and that Mr. Johnson was in severe pain and suffering. See, (N.T. 3/31/2026) (Dr. Tejeda testified that Mr. Johnson could have died if the infection had spread.).

Furthermore, Defendant Ellers testified that he violated the law when overseeing Mr. Johnson's Health Care. Specifically, defendant Ellers testified that he violated the Pennsylvania Public Official and Employee Ethics Act, 65 Pa.C.S. § 1103(a) and (f) et seq.. Defendant Ellers testified he knew the law prohibited his employment as the CHCA but that some random person from HR told him he could come back after a year despite no exception in the law permitting that. (N.T. 3/31/2026). Obviously, the jury did not credit his lies.

Even more troubling, Defendant Ellers testified that Mr. Johnson's Health care was provided pursuant to some "cost reduction program" that was part of the medical service contract between Well Path and the PA. DOC. In previous case law in our jurisdiction Courts have indicated an awareness of such a program where inmates health care is either denied altogether or delayed so that the health care provider could project a low inmate health care cost and profitability to retain their contract with the State. See for example, Turner v. Wetzel, 2020 U.S. Dist. LEXIS 46613 (M.D. Pa., Mar. 18, 2020) (Allowing claim to proceed alleging cost reduction program).

Not only did defendant Ellers brag on the stand that he wrote a lot of the health care policy for the PA. DOC and worked in prison health care for over thirty years, he also testified that he influenced the contract negotiations and acceptance of the health care contract by the PA. DOC when he worked for Well Path which is another crime in and of itself out side of his admitted violation of the Pennsylvania Public Official and Employee Ethics Act. See, (N.T.,3/31/2026).

This Court should take Judicial Notice of the "U.S. Attorney's Office, Eastern District of Virginia, October 7, 2021, Press release" regarding Defendant Ellers business partner "Gerard Boyle". (Boyle was the founder of Well Path and was convicted of corruptly influencing Prison Medical Service Contracts for Well Path.) Defendant Ellers testified he was the Vice President of Well Path when he

11

(Ellers) influenced contract negotiations and acceptance by the PA.DOC of Well Paths Contract.

There is a lot more to this story. But case is short, Defendant Ellers testimony in this case established that he violated Federal law also and this court should take judicial notice of what happened to his business partner Gerard Boyle. See, Jordan ex rel. Realator Real Party V. Phila. Media Network, 751 Fed. Appx. 239 n.2 (3rd.Cir.2018) ("Judicial notice may be taken at any stage of the proceeding, including on appeal")

Although the jury in the case sub judice was unaware of the case against Boyle, there was enough evidence in defendant Ellers own testimony for them to draw the inference that Mr. Johnson's emergency treatment was delayed until the next year (fiscal period) pursuant to a "cost reduction program" in which defendant Ellers had a personal financial interest in.

By any metric system, the punitive damages were appropriate and Constitutional. Defendant Ellers conduct was (1) intentional and motivated by personal financial gain in kickbacks from Well Path and a salary from the State; (2) Reprehensible in that he took advantage of Mr. Johnson whom this Court classifies as "one of the most vulnerable among us: a prisoner [who] cannot get out side help." Gilmore, @ *9.; (3) Wanton, Reckless and Callous in that he knew Mr. Johnson was in severe pain and suffering and due to his 30+ years in health

12

care could die if not treated; (4) was particularly blame worthy in that he repeatedly ignored written and verbal notices from several people to get Mr. Johnson treatment knowing it was his duty to do so.

By all accounts, Defendant Ellers should be in prison for the way he conducted himself when violating Mr. Johnson's Constitutional Rights. The Punitive damages award were a slap on the wrist when compared to his actual conduct as established by the record in this case, and as such, should no be disturbed.

The Punitive Damages Award is Not Constitutionally Excessive:

In the case sub judice, the jury awarded $15,000.00 in compensatory damages and $ 85,000.00 in punitive damages. This is in the single digit Ratio that usually go undisturbed by the Courts. The Ratio award in this case is a little over 5:1 which is well below a double digit ratio that would raise concern for the court.

In Washington V. Gilmore, 124 F.4th 178 (3rd. Cir.2024), this Court approved a 10:1 Ratio punitive damages award holding that the ratio exceeds single digits-but only by a penny and not to a significant degree. id. @ *10.

Therefore, where the punitive damages against defendant Ellers in the case sub judice is within the mid single digit ratio, it cannot be said to be unconstitutionally excessive.

Based upon all the above, the juries measured and well supported punitive

damages award should not be disturbed in the Interest of Justice. ⚖

**ARGUMENT # 4**

**THE DEFENDANT'S CLAIM OF QUALIFIED IMMUNITY IS UTTERLY ABSURD AND WAIVED AND COUNSEL SHOULD BE SANCTIONED FOR RAISING AN ARGUMENT SOLELY TO WASTE THE COURT'S TIME.**

The law is so firmly established over the last few decades in regards to defendant Ellers liability that it is impossible for the appellant's counsel to not know that defendant Ellers could never succeed on a qualified immunity claim in this case.

In Oke v. Garman, 2019 U.S. Dist. LEXIS 119484 (M.D. Pa., July. 8, 2020), Defendant Ellers predecessor CHCA Ted Williams was held liable for failing to ensure that inmate Oke received timely emergency dental care. Ellers worked with CHCA Williams before he took over the position and as a matter of DOC Policy was required to be informed of that legal issue. This case law, along with defendant Ellers personal knowledge and admitted 30+ years in the prison medical industry shows that he knew he was violating Mr. Johnson's Rights.

Regardless, the case law is crystal clear in this regard. See, Thompkins v. Belt, 828 F.2d 298, 305 (5th Cir.1987) (Sheriff could be held liable if he knew the plaintiff's request for medical treatment were being ignored); Lavender v.

14

Lampert, 242 F.Supp.2d 821, 840 (D.Or.2002) (Health Service Managers who were notified repeatedly of failure to address the plaintiff's chronic pain could be found deliberately indifferent.) Miller v. King, 384 F.3d 1248, 1263 (11th. Cir.2004) (Prison supervisor could be liable for failing to act on knowledge that prison staff are unlawfully delaying or denying medical care.)

See also, Fambro V. Fulton County, Ga., 713 F.Supp. 1426, 1429-1431 (N.D.Ga.1989) (Three week delay in dental care unreasonable); Fields V. Gander, 734 F.2d 1313, 1315 (8th. Cir.1984) (Three week delay in providing treatment unreasonable.); Moore v. Jackson, 123 F.3d 1082, 1087 n.3 (8th. Cir.1997) (Three month delay in providing dental treatment unreasonable.); Goodnow v. Palm, 264 F.3d 125, 130-134 (D.Vt.2003) (Seven month delay in providing dental treatment unreasonable.); Scicluna v. Wells, 345 F.3d 441, 446 (6th. Cir.2003) (three week delay in examining prisoner unreasonable) and Oke v. Garman, 2019 U.S. Dist. LEXIS 119484 (M.D. Pa., July. 8, 2020) (Six week delay in dental treatment was deliberate indifference.)

The law has been so well developed over the last few decades in regards to defendant Ellers conduct that his counsel could have only raised a qualified immunity claim to waste this Court's time. There must be some type of penalty to discourage this type of behavior.

In any event, the claim must be summarily denied as a matter of law and

fact.

## **CONCLUSION:**

Wherefore, base upon all the above facts, arguments, discussions and citation of authorities, it is clear that the Interest of Justice, finality, comity, Judicial efficiency and Judicial economy would be served by Granting Summary Action in this case.

Date: _6-7- 2026_

Respectfully Submitted

AQUIL JOHNSON-Appellee

**IN THE UNITED STATES COURT OF APPEALS FOR THE
THIRD CIRCUIT**

| | |
|---|---|
| **AQUIL JOHNSON** | : Appeal Docket Number |
| Appellee | : |
| v. | : **No: 26-2056** |
| PA.Dep't of Corrections | : |
| Appellants | : |
| | : |

# **CERTIFICATE OF SERVICE**

I hereby Certify that the below person(s) were served a true, complete and correct copy of this document on the below date at the below address by First Class U.S. Mail.

Attorney Jacob Frasch
Pa. Attorney General's Office
15th floor, Strawberry 🍓 Square
Harrisburg, PA.17120

Date: _6-7- 2026_                     Respectfully Submitted

_Aquil Johnson_
AQUIL JOHNSON # JS6478
SCI Frackville
1111 Altamont Blvd.
Frackville, PA.19731

AQUIL JOHNSON #JS6478
SCI Frackville
1111 Altamont Blvd.
Frackville, PA. 17931

INMATE MAIL
PA DEPT OF
CORRECTIONS

quodient
FIRST-CLASS M
IMI
$002.44



RECEIVED
JUN 12 2026
U.S.C.A. 3rd CIRCUIT



To: Clerk of Courts For The
Third Circuit Court of Appeals
601 Market Street, RM. 21400
Philadelphia, PA. 19106

Case: 26-2056   Document: 16   Page: 18   Date Filed: 06/12/2026